In re MARRIAGE OF RUSSELL CHARLES SEMMLER, Petitioner-Appellant and Cross-Appellee, and PRISCILLA JEAN SEMMLER, Respondent-Appellee and Cross-Appellant.

Second District No. 80-83

Opinion filed November 26, 1980.

650

Richard D. Schiller, of Goldsmith, Thelin, Schiller & Dickson, of Aurora, for appellant.

William C. Murphy and Kalen L. Komlos, both of Reid, Ochsenschlager, Murphy & Hupp, of Aurora, for appellee.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Russell Charles Semmler (husband) filed a petition to dissolve his marriage to Priscilla Jean Semmler (wife). At the close of the husband's proof the trial court granted the wife's motion for judgment in her favor and dismissed the suit with prejudice. The husband appeals, contending that the judge's finding that he had not proved extreme and repeated mental cruelty (Ill. Rev. Stat. 1979, ch. 40, par. 401(2)) is against the manifest weight of the evidence. He also claims error in the exclusion of proffered testimony of a therapist with whom the wife had consulted.

The parties separated on April 15, 1979. At the time of the filing of the petition the husband was 54 years old and the wife 52. They had been married almost 29 years, with three adopted children, Mark, age 17, Julie, age 14, and Kathryn, age 10.

The husband testified to some 10 areas of what he considered the wife's misconduct. He placed special emphasis on what he said was her refusal to have sexual relations in the period from 1975-1978. He said that during that period he requested sex with his wife in the beginning weekly and later at monthly intervals. He related there were "always so many conditions that if you did this, this, and this, possibly we could." He said usually her negative response was in judgment of how he lived, what he believed, or some times that there was no response. He said they occupied the same bedroom until he moved out on April 15, 1979, but that they always slept in twin beds. On cross-examination the husband denied knowledge that the wife was having problems achieving painless intercourse or was being treated for cervical problems. He did agree that "for a limited period of time" she applied special lubricants prescribed by a physician before intercourse. The husband acknowledged that he was

receiving treatment for a prostate condition of varying degrees of severity over the past 10 years. He acknowledged that he may have stated on July 5, 1978, to his doctor that he recently had had intercourse but that he did not want to admit the actual situation to the doctor.

Several other of the husband's complaints involved the wife's criticism, usually in private but on some occasions before others, regarding the husband's smoking and drinking which the wife disapproved of but which the husband said were very moderate; and criticism of his religious beliefs, particularly after he had remained in their original church membership while she had changed. Other complaints testified to by the husband involved the husband's relation with his daughters. He said the wife would not allow him to take the daughters anywhere unless she went along and that the girls were often involved in church and other activities in the evening when he was home; and that the wife discouraged the daughters from telling their father about school functions where he might participate. He said the problems with his relationship with his daughters developed gradually and began to worsen after the wife changed churches in the fall of 1976.

The husband also testified to arguments over the past 15 years at tax filing time when, he said, his wife repeatedly accused him of filing dishonest tax returns, argued over whether they should file a joint return, and refused to sign the joint return until just before the filing deadline on most occasions.

The husband also testified that the wife falsely accused him of sexual misconduct, immoral behavior and infidelity.

The husband also complained that the wife sold a coffee table that he had won in a sales contest without permission in 1974 and bought some carpeting from a business competitor rather than his own company in 1975.

He stated that he experienced difficulty sleeping and eating in 1976-1978, and that in 1977 he experienced a feeling of tightness and clamminess for 10 to 15 minutes for which he sought medical treatment. The doctor whom he consulted prescribed that he read booklets about angina "and learn to relax and release the tension." He was given nitroglycerine pills but has never used them. He said that his wife would call at least once a day over the last nine years mainly concerning problems at home and he thus had to work more hours on the job. He related that the energy he used to resolve problems at home affected his freedom to socialize and travel. And he stated that he had less difficulties eating and sleeping after the separation.

On cross-examination, the husband testified to his position as officer of several companies and stated that he had received salary increases

during the past five years. He had missed, on the average, less than five days a year in that period due to illness. He denied that he had provoked any of the wife's misconduct.

Mark Semmler, the son of the parties, testified that he moved out of the marital home with his father on April 15. He said he overheard about six conversations between the parties over their sexual relationship dating back to 1973. In two of the conversations his father complained they could only have sex if it was done in a certain way that she wanted. In two other conversations his father said that his mother accused him of being a homosexual. His mother denied making the accusation and said that he should spend more time with her "in love and sexual relationships." Mark also heard numerous conversations where his mother told his father of the evils of drinking and smoking. He was also present when she accused his father of cheating on his taxes.

Mark also described conversations in which his mother told his father that he spent too much time with the children and not enough with her, and she told the children they should not ask their father to do things with them. He said that his mother called his father at work in an hysterical manner and threatened to call the police on many occasions if he didn't come home and settle a dispute. He said that his father never did anything to provoke her misconduct. He noticed that his father was nervous, upset, depressed and had trouble sleeping, but that his condition had improved since the separation.

On cross-examination Mark stated that he had frequent bitter fights with his mother and that twice the police had to be called to his home, although no details of those occurrences are in the record. He admitted possibly pushing his sister Julie on one occasion.

The husband also called Roy Lundquist, a clinical family therapist, as a witness. He testified that the parties first consulted him in November of 1973 because of problems with Mark and that for the first three months he dealt exclusively with Mark's problems but later consulted with them concerning the marital relationship. At that point in the testimony defense counsel objected to further testimony on the ground that the conversations were privileged and the judge sustained the objection, finding that the privilege existed under the Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 801 *et seq.*). In the offer of proof made by the husband it was elicited that Lundquist would have testified that during the consultations involving himself, an associate therapist, and the parties, the wife accused the husband of being unfaithful, cheating on his taxes and "not being spiritual because he smoked and drank."

■■ The standard to be applied to our review of the judge's ruling on the

defendant's motion for judgment at the close of plaintiff's evidence is provided in section 64(3) of the Civil Practice Act. (Ill. Rev. Stat. 1979, ch. 110, par. 64(3).) A judge is not required to consider the evidence in the light most favorable to the plaintiff, but he has the duty to pass on the credibility of the witnesses as well as to consider the weight and quality of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 57-58. See also *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154-55.

■■ ■ The complaining party has the burden of proving a course of abusive and humiliating treatment by his spouse calculated or obviously of a nature to render his life miserable and to affect his physical and mental health. (*Klakk v. Klakk* (1976), 41 Ill. App. 3d 462, 463.) Whether the acts charged constitute mental cruelty depends on the total factual background and is determined primarily by the effect of the alleged misconduct upon the complaining party. (*Rey v. Rey* (1974), 23 Ill. App. 3d 274, 275.) It is not sufficient to show that a reconciliation seems no longer possible and that the marriage appears dead. (*Matthews v. Matthews* (1976), 36 Ill. App. 3d 508, 511.) Conduct may be of a nature to fall within accepted definitions of mental cruelty but if it lacks detail, is partially impeached on cross-examination and has a minimal effect on a party over a long period of tolerance a finding by the trial judge that the proof is insufficient will not be found to be against the manifest weight of the evidence on review. (*Rey v. Rey* (1974), 23 Ill. App. 3d 274, 277.) In determining the effect upon the husband the trial judge may consider the emotional makeup of the parties and the circumstances surrounding the alleged misconduct. (See *Rosenbaum v. Rosenbaum* (1976), 38 Ill. App. 3d 1, 13.) It appears from the nature of the misconduct relied on to prove mental cruelty, taken together with the requirement of proving the effect on the complaining party, that the trial judge's determination must necessarily be highly individualized and depend on the factual background of each case. The trial judge thus is in the best position to assess the credibility of the witnesses and the nature, weight and quality of the evidence in determining the issues of mental cruelty. See *Graff v. Graff* (1979), 71 Ill. App. 3d 496, 502; *Rey v. Rey* (1974), 23 Ill. App. 3d 274, 277.

Here the trial judge specifically found that the evidence as to the effect upon the husband's health was insufficient to constitute proof of mental cruelty. That conclusion does not appear to be against the manifest weight of the evidence. On cross-examination it was demonstrated that the husband was successful in business, had lost no time from work and had increased his earnings in the years in which the misconduct was charged. There was little evidence to support the husband's claim of a health problem which could be attributed to any misconduct of the wife. The husband's inability to sleep was corroborated by his son but no

substantial effect upon his health was shown, the possible angina attack being an isolated incident. The energy expended settling problems at home may have had more to do with his children's conduct than misconduct by the wife. By observing the husband's demeanor and poise the trial court was in a unique position to assess the effect of the alleged misconduct upon the husband's health and whether his life was rendered miserable. In reviewing the entire record, the judgment is not against the manifest weight of the evidence.

■■ We further conclude that there was no error in denying the offer of proof of Lundquist's testimony. Purportedly he would testify that at consultations directed solely at the problems with Mark, the wife made statements about marital problems. Where a person makes statements to a therapist in a professional consultation, those statements are privileged. The Mental Health and Developmental Disabilities Confidentiality Act (Ill. Rev. Stat. 1979, ch. 91½, par. 801 *et seq.*) provides that "in any civil * * * proceeding, * * * a recipient, * * * has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications." (Ill. Rev. Stat. 1979, ch. 91½, par. 810(a).) A recipient is defined in the Act as "a person who is receiving or has received mental health or developmental disabilities services." (Ill. Rev. Stat. 1979, ch. 91½, par. 802(6).) Mark was not present at the sessions so that the therapy must have been directed at how the parents should handle Mark; the wife was therefore "a recipient." Thus Mark's consent to disclosure does not supplant the wife's independent privilege to prevent disclosure by Lundquist. The trial judge therefore did not err in refusing the proffered testimony.

The judgment is affirmed.

Affirmed.

UNVERZAGT and NASH, JJ., concur.