MARSHA NORSKOG, Indiv. and as Adm'r of the Estate of Hillary Norskog, Plaintiff-Appellee, v. ROGER PFIEL *et al.*, Defendants-Appellants.

First District (4th Division)   No. 1—99—1829

Opinion filed June 30, 2000.

Michael C. Borders and Daniel M. Norland, both of Rooks, Pitts & Poust, of Chicago, for appellants Roger and Gayle Pfiel.

Raymond D. Pijon and Edward T. Graney, both of Chicago, for appellant Steven Pfiel.

Michael H. King, Donald C. Pasulka, and Peter N. Witty, all of Ross & Hardies, of Chicago, for appellee.

JUSTICE HALL delivered the opinion of the court:

Defendants Roger and Gayle Pfiel appeal from the April 30, 1999, order holding them in civil contempt for refusing to comply with prior orders of the court directing them to identify any mental health providers seen by their son Steven Pfiel and the dates on which each provider saw him, and to appear and testify at their depositions as to certain aspects of their communications with any such providers. Defendant Steven Pfiel appeals from the April 30, 1999, order holding him in civil contempt for refusing to comply with a prior order of the court directing him to identify any mental health providers who provided treatment to him prior to July 14, 1993, and the dates on which each provider saw him. Defendants filed a timely notice of appeal on May 14, 1999. For the following reasons we reverse.

This case arises out of a wrongful death and survival action brought by plaintiff, Marsha Norskog, against defendants Steven Pfiel and Roger and Gayle Pfiel, his parents. The complaint alleged that on July 14, 1993, then 17-year-old Steven stabbed and killed plaintiff's 13-year-old daughter, Hillary, using a 5 1/4-inch hunting knife, while they were parked at a forest preserve in an automobile owned by Steven's parents. The complaint stated claims for assault and battery against Steven and for negligent entrustment and negligent supervision against Roger and Gayle. Plaintiff also alleged a cause of action against Steven for reckless infliction of emotional distress relating to events that occurred in March 1995 when Steven murdered his brother and sexually assaulted his sister while out on bond for the murder of Hillary.[1]

Roger and Gayle's motion to dismiss the counts filed against them was granted with leave to replead. On June 26, 1996, plaintiff filed a 12-count amended complaint, including claims of assault and battery and reckless infliction of emotional distress against Steven, and negligent entrustment and negligent supervision against Roger and Gayle. Specifically, plaintiff alleged that Roger and Gayle negligently gave Steven the hunting knife used in the murder and negligently allowed Steven to use their vehicle when they knew or should have known of Steven's violent propensities and mental condition.

---

[1]After pleading guilty to both murders, Steven is presently serving a life sentence without the possibility of parole.

Plaintiff alleged that Roger and Gayle knew that Steven engaged in violent and antisocial behavior from an early age including, but not limited to, threatening and assaulting other children on several occasions; dropping bricks from an overpass onto passing traffic; consuming large quantities of drugs and alcohol both inside and outside the Pfiel home; vandalizing the motor home of a classmate; using Gayle's car to intentionally hit and kill animals; engaging in behavior resulting in at least eight incidents involving the police; brandishing the hunting knife in public; and engaging in behavior that caused him to be suspended from school at least seven times during his last year there. Plaintiff also alleged that, a few months before the murder, Roger told an officer at the Palos Park police department that Steven was becoming increasingly disruptive at home, was doing increasingly poorly at school, and had joined a group of skinheads. Plaintiff further alleged that on July 3, 1993, Steven was arrested for possession of drugs and alcohol while in a vehicle owned by Roger and Gayle.

Roger and Gayle have denied knowledge of virtually all of these factual allegations and have contended that Steven was a normal teenager.

During discovery in this matter, plaintiff sought to obtain the records of Dr. Markos, the court-appointed psychiatrist who examined Steven for fitness to stand trial in the criminal case for Hillary's murder. Plaintiff argued that the records were relevant to the issue of what Roger and Gayle knew about Steven's mental condition and violent propensities prior to the murder. Steven filed a motion to quash, arguing that the requested information was privileged under the Mental Health and Developmental Disabilities Confidentiality Act (the Act) (740 ILCS 110/1 *et seq.* (West 1996)). Plaintiff responded that the requested information was not privileged but that, even if it was, Steven had waived any applicable privilege by raising insanity as a defense in the criminal case for Hillary's murder[2]; by volunteering information relating to his prior mental health treatment to Dr. Markos after receiving Dr. Markos' admonitions regarding the nonconfidential nature of the fitness examination; and by volunteering the same information to other third parties.[3] Relying on the supreme court's decision in *D.C. v. S.A.*, 178 Ill. 2d 551, 687 N.E.2d 1032 (1997), plaintiff also argued that even if there was no waiver, fundamental fairness required

---

[2]Before eventually pleading guilty to Hillary's murder, Steven raised the defense of insanity, retained and identified an expert witness, and produced a 57-page report to the State's Attorney in support of his insanity defense.

[3]Plaintiff alleged that in the criminal case Steven told his probation officer that he began seeing a psychologist at the age of nine.

the disclosure of the extent of Roger and Gayle's knowledge of Steven's mental health condition.

On March 18, 1997, the circuit court entered an order granting Steven's motion to quash without prejudice. In order to explore whether Steven waived his privilege under the Act, plaintiff was given leave to take the limited deposition of Dr. Markos on the issue of what admonitions were given to Steven at the time he submitted to the examination by Dr. Markos. Dr. Markos testified that he told Steven that any information supplied during his fitness examination would not be confidential in the sense that the information would be sent to the judge. Based on this testimony, plaintiff sought reconsideration of the March 18, 1997, order denying access to Dr. Markos' records.

On March 16, 1999, the circuit court entered an order stating:

"Steven Pfiel's motion to quash the subpoena for deposition of Dr. Markos is granted. For the reasons stated in open court, including findings that Pfiel has not waived his privilege under the Mental Health and Development Disabilities Confidentiality Act and that admonitions given to him by Dr. Markos were insufficient to constitute waiver of confidentiality or privilege, the plaintiff may not depose Dr. Markos or obtain his records pertaining to Pfiel's fitness-for-trial examinations."

In the same order, the circuit court *sua sponte* ruled on the discoverability of any mental health treatment received by Steven prior to the murder of Hillary. The March 16, 1999, order provided:

"[T]his court finds per *D.C. v. S.A.*, 178 Ill. 2d 551 (1997), Roger Pfiel and Gayle Pfiel should produce the identities of any mental health provider seen by Steven Pfiel and the dates on which each provider saw him. Plaintiff may depose Roger Pfiel and Gayle Pfiel as to any communications made to them by a mental health provider but such questions shall be limited to Steven's diagnosis and any recommendation or admonition given to them by a mental health provider as to what they should or should not do concerning Steven's mental health. Plaintiff may depose any mental health provider limited to the above areas. Pursuant to 740 ILCS 110/10, this court shall conduct an in camera inspection of testimony or other evidence concerning the discovery information permitted above to determine that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible."

On March 17, 1999, the circuit court ordered Roger and Gayle to provide the names of Steven's mental health providers in compliance with the March 16, 1999, order. The circuit court also ordered Steven to identify any mental health providers he treated with before July 14, 1993, including the dates of treatment. Rather than comply with the discovery orders, the three defendants requested that the circuit court hold them in civil contempt.

On April 30, 1999, the circuit court held all three defendants in civil contempt for refusing to comply with the discovery orders regarding disclosure of mental health information. The circuit court found that the Pfiels' refusal to comply with the prior orders of the court was in good faith for the purpose of seeking appellate review of a disputed legal issue, *i.e.*, whether the ordered disclosure of mental health information was in violation of the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 *et seq.* (West 1996)). The circuit court fined each defendant $25 and provided that the fines would be vacated if any portion of the court's orders were reversed on appeal.

On April 29, 1999, plaintiff filed a motion seeking certification of questions to the appellate court pursuant to Supreme Court Rule 308(a) (134 Ill. 2d R. 308(a)). Plaintiff sought immediate appellate review of the parts of the circuit court's March 16, 1999, order dealing with waiver. On May 4, 1999, plaintiff's motion to certify questions was denied.

On appeal, defendants contend only that the circuit court erred in holding them in contempt of court for refusing to comply with the court's previous order directing them to disclose certain mental health information regarding Steven.

## DISCUSSION

### I. Jurisdiction and Standard of Review

A contempt proceeding is an appropriate method for testing the correctness of a discovery order (*Lewis v. Family Planning Management, Inc.*, 306 Ill. App. 3d 918, 715 N.E.2d 743 (1999)), and where an individual appeals a contempt judgment imposed for violating a discovery order, that discovery order is subject to review. *Almgren v. Rush-Presbyterian-St. Lukes Medical Center*, 162 Ill. 2d 205, 642 N.E.2d 1264 (1994). If the discovery order is invalid, then the contempt order for failure to comply with that discovery order must be reversed. *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 691 N.E.2d 123 (1998). Therefore, this court must review the propriety of the March 16, 1999, discovery order requiring disclosure of Steven's mental health information.

The question of whether certain mental health information is discoverable under the Act is one of law and is subject to *de novo* review. *D.C v. S.A.*, 178 Ill. 2d 551, 687 N.E.2d 1032 (1997); *Bonneau*, 294 Ill. App. 3d at 723.

### II. Mental Health And Developmental Disabilities Confidentiality Act

The Mental Health and Developmental Disabilities Confidenti-

ality Act (740 ILCS 110/1 *et seq.* (West 1996)) guarantees that mental health records will be privileged and confidential. The Act provides that "[a]ll records and communications shall be confidential and shall not be disclosed except as provided in this Act." 740 ILCS 110/3(a) (West 1996). The Act defines "confidential communication" or "communication" as:

> "any communication made by a recipient or other person to a therapist or to or in the presence of other persons during or in connection with providing mental health or developmental disability services to a recipient. Communication includes information which indicates that a person is a recipient." 740 ILCS 110/2 (West 1996).

The Act clearly makes confidential any communication made during or in connection with providing mental health or developmental disabilities services to a recipient and any record kept in the course of providing such services. The Act further makes it clear that communication includes any information that indicates that a person is a recipient of mental health services. See also *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 564 N.E.2d 922 (1990) (finding that disclosure of the requested information would reveal that the patient was a recipient of mental health services and would result in a violation of the Act). A recipient is defined as a "person who is receiving or has received mental health or developmental disabilities services." 740 ILCS 110/2(a) (West 1996).

The requested information includes the names of any mental health providers seen by Steven, the dates on which each provider saw him, and certain aspects of Roger and Gayle's communications with any such providers. When minors are involved, the therapist-patient relationship necessarily extends to the parents, who act on the minor's behalf. It is the parents who typically initiate any mental health treatment for a minor and they, like the minor, have an expectation that records and communications will remain privileged. The Act recognizes this unique role of parents by allowing them to inspect and copy their child recipient's records. 740 ILCS 110/4(a)(1) (West 1996).

We find that the requested information, if disclosed, would reveal that Steven was a recipient of mental health services and would result in a violation of the Act, unless one of the narrow exceptions enumerated in the Act applies. Section 10(a)(1) of the Act governs disclosure of confidential information in civil cases and provides:

> "(a) Except as provided herein, in any civil, criminal, administrative, or legislative proceeding, or in any proceeding preliminary thereto, a recipient, and a therapist on behalf and in the interest of a recipient, has the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications.

(1) Record and communications may be disclosed in a civil, criminal or administrative proceeding in which the recipient introduces his mental condition or any aspect of his services received for such condition as an element of his claim or defense, if and only to the extent the court in which the proceedings have been brought *** finds, after in camera examination of testimony or other evidence, that it is relevant, probative, not unduly prejudicial or inflammatory, and otherwise clearly admissible; that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established by such evidence; and that disclosure is more important to the interests of substantial justice than protection from injury to the therapist-recipient relationship or to the recipient or other whom disclosure is likely to harm. *** [N]o record or communication between a therapist and a recipient shall be deemed relevant for purposes of this subsection, except the fact of treatment, the cost of services and the ultimate diagnosis unless the party seeking disclosure of the communication clearly establishes in the trial court a compelling need for its production." 740 ILCS 110/10(a)(1) (West 1996).

Thus, before disclosure can be ordered, the circuit court must find that the recipient has introduced his mental condition as an element of his claim or defense. If he has, the court conducts an *in camera* examination of the testimony or other evidence to determine if it is relevant, probative, and not unduly prejudicial. If he has not placed his mental health at issue, disclosure of the records or communications, including information which indicates that a person is a recipient, is not permitted. Only the recipient (in this case Steven) may open the door to disclosure by making his mental condition an issue in the case. The opposing party (in this case plaintiff) has no unilateral right to introduce another's mental condition as an issue. The circuit court in this case found that Steven had not placed his mental health at issue under the terms of section 10(a)(1) or otherwise waived his privilege. This decision is not at issue in this appeal. Thus, the records and communications at issue in this case may not be disclosed.

■ Plaintiff claims that the records and communications are discoverable under *D.C. v. S.A.*, 178 Ill. 2d 551, 687 N.E.2d 1032 (1997). In *D.C.*, the plaintiff, a pedestrian, brought a negligence action after being struck and injured by an automobile driven by one of the defendants. During discovery, the defendants obtained a letter from one of the plaintiff's treating physicians referring plaintiff for a psychiatric evaluation because the plaintiff had indicated that he might have been attempting suicide at the time of the accident. The defendants sought discovery of the plaintiff's mental health records,

but the plaintiff refused to disclose the records, claiming that they were privileged under the Act. The trial court ordered production of the records for an *in camera* inspection. The trial court found that the plaintiff had placed his mental health at issue in the case and allowed limited discovery of certain records. The appellate court reversed, holding that none of the records were discoverable because the plaintiff had not placed his mental health at issue.

The supreme court agreed with the appellate court that the plaintiff had not placed his mental health at issue, but required disclosure of certain records based on principles of fundamental fairness and substantial justice. The court noted that the information the plaintiff sought to protect potentially contradicted his assertion that the defendants were negligent and caused the accident. The fact that the plaintiff may have tried to commit suicide by throwing himself in front of defendant's car potentially contradicted plaintiff's assertion that defendants were negligent and caused the accident. The information sought to be protected had the potential to completely absolve defendants from any liability.

We find that *D.C.* is not applicable to the present case. Unlike in *D.C.*, where the party claiming the privilege was the plaintiff, in the present case, it is the defendant who is claiming the privilege. The two parties occupy very different roles. A plaintiff may not use the privilege as a sword by seeking damages and at the same time try to hide mental health information that may be a complete bar to his claims. Steven is not using the protections provided by the Act as a sword but rather as a shield. He is using the privilege in the manner in which it was meant to be used.

By its express terms, *D.C.* creates a narrow exception to the mental health privilege. To apply that exception here would expand *D.C.* too far. We find that the March 16, 1999, order requiring discovery of Steven's mental health information based upon *D.C.* was in error and that the circuit court further erred in holding defendants in contempt for failing to comply with the March 16, 1999, discovery order.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is reversed and this cause is remanded for further proceedings.

Reversed and remanded.

HOFFMAN, P.J., and BARTH, J., concur.