(No. 47390

HOLLY ESKANDANI *et al.*, Appellees, v. MAE PHILLIPS, Appellant.

*Opinion filed June 30, 1975.—Rehearing denied September 24, 1975.*

184

WARD, J., took no part.

Joseph C. Owens, of Chicago, and John R. Mackay, of Wheaton, for appellant.

Clyde O. Bowles, Jr., of Plunkett, Nisen, Elliott & Meier, of Chicago (Benjamin G. McFate, of Oil City, Pennsylvania, of counsel for appellees Dr. Hugh R. Gilmore and C. A. Perry, and Milton W. Rosen, of Oil City,

Pennsylvania, of counsel for appellee William J. McFate), for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Respondent, Mae Phillips, appealed from the order of the circuit court of Du Page County entered upon a petition filed pursuant to Supreme Court Rule 204(b) by Dr. Hugh R. Gilmore, William J. McFate and C. A. Perry, executors of the estate of respondent's deceased husband, and Holly Eskandani. The circuit court ordered that respondent appear before petitioner, Holly Eskandani, a notary public, for deposition, that she submit to a medical examination, and that, upon 10 days' notice to respondent's counsel, attorneys for petitioners be permitted to take the depositions of certain designated individuals who are residents of Illinois. The appellate court, holding that the order was not final and appealable, dismissed the appeal. We have allowed respondent's petition for leave to appeal.

Dr. Arthur Phillips, a retired professor of medicine at the University of Pennsylvania and a resident of Emlenton, Venango County, Pennsylvania, died testate on September 26, 1974, leaving an estate valued at approximately $2,500,000. His will was admitted to probate in the Orphans' Court division of the Court of Common Pleas, Venango County, Pennsylvania.

Dr. Phillips left no surviving descendants. At the time of his death, his wife, the respondent here, was confined to Grove Manor, a convalescent home in Grove City, Pennsylvania. She is now 92 years of age and in poor health, suffering from, among other things, a condition diagnosed as cerebral arteriosclerosis. She has no close relatives in Pennsylvania.

Dr. Phillips's will, after making a number of specific bequests, provides for the creation of two trusts of which the executors are appointed trustees. The first trust is a

marital trust with the income to respondent during her life; a general power on her part to invade principal to provide for her maintenance, care and support in such manner as she deems fit; a comparable power to invade on the part of the trustees in the event of her incapacity; and a power of appointment in her to dispose of this trust by will at her death. The will also creates a "unitrust" for most of the remainder of the estate with provisions for three separate funds out of which annuities are to be paid to respondent and others. At her death, the unitrust is held for the benefit of charity, as is the marital trust in the event of her failure to exercise the power of appointment. In addition to benefits under the will, respondent received approximately $230,000 in cash from a joint checking account in Philadelphia. No provision is made in the will for any relative of respondent.

The principal assets of Dr. Phillips's estate are stocks and bonds believed to be in five safe deposit boxes located at the Girard Bank in Philadelphia. These boxes are in the joint names of Dr. Phillips and respondent and only she, or, if mentally incapacitated, her guardian, has access to them. The executors do not have access to the boxes, and it has not been necessary to inventory their contents. Other property of Dr. Phillips and respondent is believed to be in a safe deposit box at a bank in Emlenton, and jewelry and other property of respondent is believed to be in a safe deposit box at another Philadelphia bank. Other property owned by respondent in Pennsylvania includes household furnishings appraised at $6,500, her interest as an income beneficiary (receiving approximately $23,000 annually) under a trust estate known as the Samuel W. Phillips Trust, and her interest in her husband's estate.

Respondent's sister, Mrs. Edith Keen, and the sister's daughter, Mrs. Elaine McHugh, reside in Glen Ellyn, Du Page County, Illinois. Approximately five weeks after Dr. Phillips's death, Mrs. Keen and Mrs. McHugh arranged for respondent to be moved from the Grove Manor conva-

lescent home in Grove City, Pennsylvania, to the Americana Nursing Center in Naperville, Du Page County, Illinois, where she is now a patient. The executors have assumed financial responsibility for her care at the nursing center.

On November 22, 1974, the executors of Dr. Phillips's estate filed a petition in the Orphans' Court in Venango County, Pennsylvania, asking that respondent be "judged an incompetent and a guardian of her estate appointed." The petition does not pray for the appointment of a guardian of her person. On that same day, pursuant to the order of the Orphans' Court, petitioners sent notice of the petition and the hearing to be held thereon, by certified mail, to respondent at the nursing center, and to Mrs. Keen and Mrs. McHugh at their residence address in Glen Ellyn. Thereafter, pursuant to further order of the Pennsylvania court, a citation, with a copy of the petition and related orders and papers, was personally served on respondent at the nursing center in Naperville requiring her to file an answer to the petition and show cause why she should not be declared an incompetent.

On December 10, 1974, there was filed in the probate proceedings in Pennsylvania an "Election to Take Against the Will." The election was executed by respondent and acknowledged before a notary public on December 2, 1974. The effect of this election is to entitle respondent to distribution outright of one half of Dr. Phillips's net estate in lieu of any other interest in the estate.

On December 20, 1974, the executors filed their petition to revoke and set aside the "Election to Take Against the Will." In this petition it is alleged, *inter alia,* that respondent was incompetent, did not understand the legal effect of the election and "was influenced by others for their own benefit." On the same day the Orphans' Court ordered the issuance of a citation directing respondent to file an answer to the petition and to show cause why her election to take against the will should not be

revoked and vacated. The order, as requested in the petition, authorized the taking of her deposition at the nursing center in Naperville and authorized Dr. J. B. Johnston and Dr. J. B. Markam, physicians practicing in Venango County, or either of them, to examine her at the nursing center. On December 26, 1974, the citation, together with a copy of the petition to revoke and related papers were personally served on respondent at the nursing center in Naperville. On December 27, 1974, on petition of the executors, the court appointed an attorney as guardian *ad litem* for respondent in both the guardianship and probate proceedings.

On January 3, 1975, a Pennsylvania law firm appeared on behalf of respondent and filed four separate pleadings each entitled "Preliminary Objections," attacking the appointment of the guardian *ad litem* in both the guardianship and probate proceedings, and seeking the dismissal of both the petition for the appointment of a guardian and the petition for revocation of the election to take against the will. Each objection challenged the court's jurisdiction of the person of respondent, and in three of them it was requested that all proceedings be stayed "pertaining to the incompetency of Mae Phillips until the question of the jurisdiction of this court is determined." The objections also challenged the jurisdiction of the Orphans' Court over the subject matter of the petitions to appoint a guardian and to revoke and set aside the election to take against the will.

On January 9, 1975, the Orphans' Court held a hearing on the preliminary objections. Illinois and Pennsylvania counsel appeared for respondent and the court heard testimony and argument concerning its jurisdiction. The hearing was not completed and was adjourned to February 3, 1975.

On January 16, 1975, on petition of the executors in the guardianship proceeding, the Orphans' Court ordered an examination of respondent by Dr. J. B. Johnston, a

psychiatrist, to be conducted at the nursing center in Naperville. The following day, in both the guardianship and probate proceedings, notice was served on the attorneys for respondent advising them of the date, time and place she would be examined by Dr. Johnston, and her deposition taken. The notice further advised that the depositions of five members of the staff of the nursing home at Naperville would be taken that same day and that the deposition of Mrs. Keen, Mrs. McHugh and the Illinois attorney for respondent would be taken on the following day.

On January 21, 1975, pursuant to Rule 204(b) petitioners filed a four-count petition in the circuit court of Du Page county. In counts I and IV, petitioner Eskandani, a notary public and court reporter, seeks an order directing the issuance of subpoenas to take the deposition of respondent and eight other witnesses for use in the Pennsylvania probate proceeding (count I) and the guardianship proceeding (count IV). In counts II and III, the executors, as petitioners, seek an order for the examination of respondent by Dr. Johnston for use in the probate proceeding (count II) and in the guardianship proceeding (count III). The written consent of the guardian `ad litem` appointed by the Orphans' Court is incorporated in the petition, and he joins with the petitioners in the prayer for relief. Attached to the petition as exhibits are the letters of three physicians and the affidavit of petitioner McFate stating that in their respective opinions respondent is not competent to handle her affairs. On the same day, pursuant to leave, the petition was amended in a manner not here material.

On January 24 further preliminary objections were filed in the Orphans' Court attacking the order of January 16, 1975, for the physical examination of respondent and the notice to take depositions in the guardianship proceedings. On the same day similar further preliminary objections were filed in that court attacking the order of

December 20, 1974, for the physical examination and deposition of respondent and the January 17, 1975, notice to take depositions in the probate proceedings.

On January 28, 1975, the Orphans' Court entered four orders in the two proceedings before it. In the guardianship proceeding it dismissed the further objections filed on January 24, 1975, and held that it had jurisdiction of the subject matter. It authorized the taking of respondent's deposition for use in determining whether the court had jurisdiction over the respondent and, assuming jurisdiction, for use at the hearing on the merits. It also authorized a mental and physical examination of respondent in determining whether it had jurisdiction over respondent, and, assuming jurisdiction, for use at a hearing on the merits. Substantially the same order was entered in the probate proceeding. Orders were entered authorizing the taking of the depositions of the witnesses who resided in Illinois in both the guardianship and the probate proceedings.

On January 29, 1975, respondent, by her attorney, entered her special and limited appearance in the circuit court of Du Page County and moved to strike the petition for orders to secure the depositions and medical examination in Illinois. The motion raised issues similar to those raised in the Orphans' Court and rejected by that court's orders of January 28, 1975. The basic contention was that the preliminary challenges to the jurisdiction over the person of respondent and over the subject matter of the Pennsylvania proceedings pending against her have not been disposed of by orders of the Pennsylvania court; that until such orders are entered the two proceedings are not at issue upon any matter of fact; and that under our rules the petition to obtain evidence in the nature of a medical examination and depositions is premature. The motion to strike also addressed itself to each specific allegation and exhibit of the petition and asked that they be stricken as conclusions of law and of fact, as evidentiary statements

hearsay in nature, as being statements of facts obtained as a result of discovery taken illegally and in violation of our discovery rules and in violation of Canon 9 of the Canons of Ethics adopted by the Illinois State Bar Association, and as statements not relevant to any issue before the Illinois court, and therefore mere surplusage.

On January 30, 1975, the circuit court entered an order denying the motion to strike, allowed a second amendment to the petition, and granted respondent leave to plead in response to the petition, as amended. The second amendment sets out the further preliminary objections filed on January 24, 1975, in the Orphans' Court and the four orders of that court entered on January 28, 1975.

On February 3, 1975, respondent, by her attorneys, filed with the Supreme Court of Pennsylvania an appeal from each of the orders entered by the Orphans' Court on January 28, 1975, in the guardianship and probate proceedings. On February 3, 1975, the Pennsylvania Supreme Court issued a writ in the nature of a writ of *certiorari* to the Orphans' Court to review the orders entered in the two proceedings there. On February 4, 1975, the executors filed motions in the Pennsylvania Supreme Court to quash the appeals on the ground that the orders appealed from were interlocutory and not appealable.

On February 7, 1975, a second motion to strike was filed for respondent in the circuit court of Du Page County realleging the grounds of the initial motion to strike and admitting the allegations of the second amendment to the petition. In this second motion to strike it is argued that the Illinois proceeding should be abated until the appeals to the Supreme Court of Pennsylvania had been decided.

On February 13, 1975, the circuit court entered an order denying the motion to strike and granting the prayer of the petition. It recited that counsel for respondent chose to stand on his motion to strike without further response in the nature of an answer to the allegations of the

petition and that those allegations are deemed admitted. It then directed respondent to "submit to a medical examination by Dr. J. B. Johnston only, a psychiatrist, on Friday, February 21, 1975, at the hour of 10:30 A.M., at the Americana Nursing Center, in Naperville, Illinois." The nursing center administrator was ordered to provide appropriate facilities and otherwise cooperate in making the examination. Joseph C. Owens, respondent's attorney, was ordered "in no way [to] interfere with such medical examination and [to] cooperate in every reasonable way to facilitate the same." The order directed that the written medical report be sealed, filed with the clerk of the court and released to the petitioners only at such time as the Pennsylvania Supreme Court ruled favorably to petitioners in either the guardianship or the probate proceeding.

The order directed respondent to give her deposition on the same day at the nursing center at 1:30 p.m. Directions similar to those for the medical examination were made to the nursing center administrator and to Joseph C. Owens, and for the impoundment of the deposition pending a ruling favorable to petitioners in the Pennsylvania Supreme Court. The only persons permitted to be present at the taking of this deposition were counsel for the petitioners, counsel for respondent, any petitioner, the court reporter, the Pennsylvania guardian *ad litem* and Dr. Johnston.

The order authorizes the depositions of the eight other Illinois residents upon not less than 10 days' notice in writing to respondent's counsel. With respect to these depositions the order recites:

> "That each such deposition may proceed with respect to any issues presented on the merits or by any pending preliminary objections, in both the Election Proceeding and the Incompetency Proceeding more particularly described in paragraph 6(a) of this order, including, without limitation thereto, the subject of respondent's past and present mental and physical condition, the circumstances attendant upon her execution of the

election to take against the will of Arthur William Phillips, deceased, filed in the proceedings for probate of his estate, including Mr. Owens' notarization thereof, and matters, not privileged, pertinent to his employment as counsel for and his representation of respondent from the time of his retention until the present time."

The order also directed that these depositions be sealed and filed with the clerk of the court pending a ruling by the Pennsylvania Supreme Court favorable to the petitioners.

On February 18, 1975, respondent's counsel filed notice of appeal to the appellate court and an emergency motion to stay enforcement of the circuit court order. On February 19, 1975, the Supreme Court of Pennsylvania entered an order granting the executors' motion to quash the appeal in both the guardianship and probate proceedings. On February 20, 1975, the appellate court, finding that the orders appealed from were not final and appealable, denied the motion for stay and dismissed the appeal.

At about 10 a.m. on February 21, 1975, respondent's attorneys presented a petition for leave to appeal and an emergency motion for a stay order to a member of this court. Counsel presented argument until approximately noon and were advised that they would be notified later in the day concerning the action to be taken on the petition. In the meantime, at 10:30 a.m. that morning respondent had been examined by Dr. Johnston and her deposition was taken at 1:30 p.m. as previously ordered by the circuit court. On February 25, 1975, the report of Dr. Johnston's medical examination and the transcript of respondent's deposition were delivered to the Justice. An order was entered impounding the report and transcript, and otherwise restraining disclosure of the results of the medical examination and deposition pending further order of this court. We thereafter granted the petition for leave to appeal.

The court disapproves of the failure of counsel for

petitioners to advise the Justice to whom the motion to stay was presented that the medical examination was in progress while counsel were being heard and that the deposition was taken while the motion was under consideration.

We consider first the question whether the order of the circuit court is final and appealable. The parties are in agreement that if the main action were pending in Illinois the order would be interlocutory and not appealable (*Lester v. Berkowitz,* 125 Ill. 307; *Illinois Trust and Savings Bank v. Howard,* 185 Ill. 332; *Durkin v. Hey,* 376 Ill. 292, 297; *Moffat Coal Co. v. Industrial Com.,* 397 Ill. 196, 200) and that a contempt proceeding would be the appropriate method of testing its correctness. (*People ex rel. General Motors Corp. v. Bua,* 37 Ill.2d 180.) The parties also agree, however, that there is no Illinois authority directly in point as to the appealability of a discovery order issued in aid of an action pending in another State.

Preliminary orders in an action pending in this State are not final and appealable for the reason that they can be reviewed on appeal from the final judgment in the case. (*Durkin v. Hey,* 376 Ill. 292, 297.) The only action in Illinois is the petition filed pursuant to Rule 204(b) and the order entered by the circuit court is the final judgment in the Illinois proceeding. Discovery in Illinois in aid of an action pending in another State must be conducted pursuant to our rules, which may or may not be the same as those of the State in which the main action is pending, and the only opportunity for review by an Illinois court of the correctness of the order is by appeal from that order. If we were to hold that no appeal can be taken, respondent would be deprived of review by an Illinois appellate tribunal of an order which granted petitioners all the relief prayed in their petition and concerning which, except for enforcement procedures, nothing further remains to be done.

Petitioners have urged that we follow the rule of *Alexander v. United States,* 201 U.S. 117, 50 L. Ed. 686, 26 S. Ct. 356, and a number of other Federal cases which hold that the granting of a discovery order by one district court in aid of an action pending in another district is not a final and appealable order. The courts involved in those cases are part of the same judicial system operating under the same rules of procedure, and the orders entered are reviewable by the Supreme Court. That is not the situation with the Pennsylvania and Illinois courts here involved.

We hold that the discovery order entered by the circuit court of Du Page County is final and appealable and the appellate court erred in dismissing the appeal. The parties have briefed and argued the issues, the entire record is before us, and we have decided to retain jurisdiction of this appeal for a decision on the merits.

Respondent contends that the 204(b) petition was prematurely filed for the reason that no discovery was available until she had appeared, and issue had been joined in the Pennsylvania proceedings. Relying principally upon *Bruske v. Arnold,* 44 Ill.2d 132, respondent argues that she has made no appearance in the Pennsylvania proceedings within the contemplation of our Rule 201(d), that no issue has been joined, and that the circuit court erred in ordering discovery. She argues too that "It is offensive to traditional concepts of fair play and substantial justice for an Illinois court to compel Mrs. Phillips, a non-resident of Pennsylvania, to appear to give deposition testimony and to submit to a medical examination for the purpose of aiding persons who filed proceedings against her in that state to prove that a court of that state has jurisdiction over her person and over the subject matter of such proceedings and to prove the issues of such proceedings against her."

Rule 201(d) provides:

"(d) *Time Discovery May Be Initiated.* Prior to the time all defendants have appeared or are required to

appear, no deposition or other discovery procedure shall
be noticed or otherwise initiated without leave of court
granted upon good cause shown."

In its orders the Orphans' Court held that it had
jurisdiction over the subject matter in both the guardian-
ship and the probate proceedings and ordered the dis-
covery to aid in determining the questions of jurisdiction
over respondent's person. In view of the refusal by the
Supreme Court of Pennsylvania to review those orders we
do not find persuasive respondent's arguments that there
are no factual issues concerning her domicile, and that the
orphans court was without jurisdiction to order discovery.

Respondent's appearances filed in Pennsylvania were
similar to the special appearance provided for in section 20
of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par.
20) to question the jurisdiction of the court over the
person of a defendant. Section 20 provides for determina-
tion of issues of fact concerning the question of jurisdic-
tion, and it could not be seriously contended that the
circuit court does not possess the power to order discovery
on those fact issues necessary to determine its jurisdiction.
We perceive no reason why similar discovery may not be
ordered in a proceeding brought under Rule 204(b).

Respondent's argument that permitting discovery at
this time would offend "concepts of fair play" is based on
language quoted from *Koplin v. Saul Lerner Co.*, 52 Ill.
App. 2d 97. *Koplin* is so completely distinguishable on the
facts that no further discussion of this contention is
warranted.

Respondent contends next that petitioners had no
right to an order which compelled her to submit to a
medical examination by a psychiatrist appointed by a
Pennsylvania court. In support of this contention it is first
pointed out that neither the Pennsylvania rules of court
nor our rules make any express provision for extraterri-
torial medical examinations. Rule 215(a) (Ill. Rev. Stat.
1973, ch. 110A, par. 215(a)) provides:

"(a) *Notice; Motion; Order.* In any action in which the physical or mental condition of a party or of a person in his custody or legal control is in controversy, the court upon notice and for good cause shown on motion made within a reasonable time before the trial, may order the party to submit to a physical or mental examination by a physician suggested by the party requesting the examination, or to produce for such examination the person in custody or under legal control who is to be examined. The court may refuse to order examination by the physician suggested but in that event shall permit the party seeking the examination to suggest others. A party or person shall not be required to travel an unreasonable distance for the examination. The order shall fix the time, place, conditions, and scope of the examination and designate the examining physician."

Respondent argues that the only rule concerning discovery in Illinois in aid of an action pending in another State is Rule 204(b), which pertains only to compelling deposition testimony. While Rule 204(b) deals specifically with deposition testimony in aid of an action pending in another State, territory or country, it is the intent of the rule to empower the circuit court to grant the same discovery in Illinois in aid of an action pending in another State as it could order in an action pending in Illinois. We have held Rule 215(a) applicable to an action seeking a declaration of incompetency (*In re Conservatorship of Estate of Stevenson,* 44 Ill.2d 525) and hold that it applies in aid of the proceedings pending in Pennsylvania.

Respondent contends next that petitioners have not satisfied the "in controversy" and "good cause" limitations of Rule 215(a). We do not agree. The affidavit of petitioner McFate and a letter from petitioner Gilmore to McFate concerning their respective visits and interviews with respondent, together with letters from Drs. Maycock and Menzies, who examined her while she was still at the Grove City convalescent home, show sufficient "good cause" for a mental and physical examination. Issues concerning respondent's competency which remain to be

decided in both the guardianship and probate proceedings pending in Pennsylvania show that her physical and mental condition is "in controversy" within the contemplation of Rule 215(a). Nor do we find persuasive respondent's argument based on *Bruske v. Arnold,* 44 Ill.2d 32, that the affidavit and letter should be stricken. The record contains nothing to indicate that respondent was represented by counsel when visited by McFate for the first time, nor at the time of Dr. Gilmore's visit. Upon the occasion of his second visit, petitioner McFate was accompanied by the guardian *ad litem* appointed by the Orphans' Court. We note further that the order appealed from specifically provides that the witnesses who are to be deposed may be interrogated concerning "matters not privileged pertinent to his [present counsel's] employment as counsel and his representation of respondent from the time of his retention until the present time." This case is clearly distinguishable from *Bruske.*

Although the parties have not cited or discussed the Physical and Mental Examination Act (Ill. Rev. Stat. 1973, ch. 110, par. 100) we find the examinations to which it refers to be analogous to the physical and mental examinations sought by petitioners. The Act provides:

> "Whenever the defendant in any litigation in this State has the right to demand a physical or mental examination of the plaintiff pursuant to statute or Supreme Court Rule, relative to the occurrence and extent of injuries or damages for which claim is made, or in connection with the plaintiff's capacity to exercise any right plaintiff has, or would have but for a finding based upon such examination, the plaintiff has the right to have his or her attorney, or such other person as the plaintiff may wish, present at such physical or mental examination."

Although reference is made to "plaintiff" and "defendant" and to "injuries" and "damages," the statute refers also to the capacity to exercise any right the

plaintiff has or would have but for a finding based upon such examination. The proceedings in Pennsylvania involve the exercise of a right which respondent has unless she is found to be incompetent. The provisions of the Act demonstrate the legislative policy that should govern such examinations, and we hold that petitioners are entitled to a physical and mental examination of respondent and that the examinations must be made pursuant to Rule 215(a) and the Physical and Mental Examination Act.

Having concluded that petitioners are entitled to the discovery sought, we consider the question of the disposition to be made of the report of the medical examination conducted by Dr. Johnston and the transcripts of the deposition presently impounded by our earlier order.

Respondent argues that the report and transcript should be permanently impounded because the examination was made and the deposition taken while the motion for a stay of the circuit court order was being argued before a member of this court and being considered by him. Petitioners argue that they proceeded with the examination and deposition as ordered by the circuit court, that a stay had not been entered, that no rights of respondent were infringed and that the evidence should be made available to the Orphans' Court.

We are of the opinion that respondent's rights were not adequately protected by the circuit court order or in the discovery that has been made. With respect to the medical examination respondent was entitled to the protective provisions of Rule 215(a) and the Physical and Mental Examination Act. Although the admissibility of the testimony will, of course, be determined under Pennsylvania law, an Illinois attorney familiar with this State's law, practice and procedure and acting as her guardian *ad litem* should be present and should be permitted to participate in the taking of the deposition of respondent and all other witnesses deposed. We hold that the medical report and the deposition transcripts now impounded may

not be used in the Pennsylvania proceedings and will remain impounded pending further order of this court.

The order of the appellate court dismissing the appeal is reversed and the order of the circuit court of Du Page County is reversed and the cause remanded to that court for entry of an order in accordance with the views expressed herein.

*Reversed and remanded,*
*with directions.*

MR. JUSTICE WARD took no part in the consideration or decision of this case.