# Illinois Official Reports

## Appellate Court

---

**_Daewoo International v. Monteiro_, 2014 IL App (1st) 140573**

---

| | |
|---|---|
| Appellate Court Caption | DAEWOO INTERNATIONAL, Petitioner-Appellee, v. LUIS EDUARDO MONTEIRO, Respondent-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-0573 |
| Filed | December 12, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from petitioner's attempt to recover $14.5 million petitioner paid to respondent's metal company for pig iron petitioner never received, the appellate court dismissed respondent's appeal from orders requiring him to appear for a deposition and produce documents due to the lack of jurisdiction arising from respondent's failure to timely comply with the applicable rules and procedures. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-000938; the Hon. Eileen M. Brewer, Judge, presiding. |
| Judgment | Appeal dismissed. |

Counsel on
Appeal

Nicholas A. Caputo, of Caputo & Popovic, P.C., of Chicago, for appellant.

Scott T. Schutte and Jane E. Dudzinski, both of Morgan, Lewis & Bockius LLP, of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Reyes concurred in the judgment and opinion.

**OPINION**

¶ 1    The underlying case concerns a dispute over petitioner Daewoo International's (Daewoo's) payment of allegedly $14.5 million to American Metals Trading, L.L.P. (AMT LLP), for pig iron that Daewoo never received. In respondent's brief to this court, he acknowledges that "Daewoo had paid for [the pig iron] but had not received [it]."

¶ 2    In December 2012, Daewoo initiated an arbitration proceeding in New York against AMT LLP and, in anticipation of arbitration, obtained an order of attachment from the supreme court of New York for $16.5 million. On January 17, 2013, the supreme court of New York entered another order granting Daewoo's motion to obtain discovery and take depositions in aid of the attachment.

¶ 3    On January 28, 2013, Daewoo filed in the circuit court of Cook County a petition requesting the court to issue subpoenas to AMT LLP's four members and directors, Luis Eduardo Monteiro and his three brothers, which the circuit granted on January 29, 2013. Eleven months later, in December 2013, Monteiro filed a motion to vacate claiming that Daewoo's petition had failed to satisfy the statutory requirements needed for subpoenas in an out-of-state action. On January 24, 2014, the circuit court denied Monteiro's motion, ordered him to appear for deposition, and imposed sanctions if he failed to comply. It is this January 24, 2014, order that Monteiro named in his February 13, 2014, notice of appeal.

¶ 4    In his brief to this court, Monteiro does not argue that the circuit court lacks personal jurisdiction over him; rather, he claims only that Daewoo's petition for a subpoena failed to comply with the technical requirements of Illinois Supreme Court Rule 204(b) (eff. Dec. 16, 2010). He argues that personal jurisdiction and Rule 204(b) requirements are two entirely separate issues. The rule permits a person who is authorized by the laws of another state to take a deposition to "petition the circuit court in the county in which the deponent resides *** or is found for a subpoena to compel the appearance of the deponent." Ill. S. Ct. R. 204(b) (eff. Dec. 16, 2010).

¶ 5    On appeal, Monteiro claims that Daewoo failed to allege and prove Monteiro's residence or location in Illinois, as Rule 204(b) required. Although Monteiro states in his appellate brief that "as of December 2013 [he] was living in Rio de Janeiro, Brazil," he does not argue that he could not, in fact, be found in Cook County in January 2013 when the court granted Daewoo's

Rule 204(b) petition or at other times during the remainder of 2013. In fact, on March 26, 2013, the circuit court asked Monteiro's counsel, "You say he comes here quite frequently?" and his counsel responded: "From time to time. Yeah."

¶ 6    In its response on appeal, Daewoo argues that Monteiro's Rule 204 claims are both waived and unfounded. For the following reasons, we find that we lack jurisdiction to consider Monteiro's claim and we dismiss his appeal.

¶ 7                                    BACKGROUND

¶ 8    We provide below a comprehensive description so that the reader may fully grasp Daewoo's now almost two-year effort to take Monteiro's deposition for the purpose of tracing the missing $14.5 million. The description also includes the court's efforts to address and resolve each of Monteiro's objections, as they were made, one by one.

¶ 9                               I. Daewoo's First Petitions

¶ 10   As noted above, on January 17, 2013, the supreme court of New York entered an order authorizing Daewoo to take Monteiro's deposition and obtain discovery from him.

¶ 11   On January 28, 2013, Daewoo filed a petition in the circuit court of Cook County pursuant to Rule 204(b) asking the court to issue subpoenas for testimony and documents from Monteiro and others, which the court granted the following day. The petition does not indicate that it was served on the opposing party or the subject individuals. Although the petition does not state that Monteiro resides, is found or transacts business in Illinois, the record on appeal does not contain a report of proceedings or bystander's report for January 29, 2013, to indicate if proceedings were held. As a result, we do not know what, if any, additional information was provided to the circuit court prior to its grant of the petition.

¶ 12   The January 29, 2013, order directed Monteiro: (1) "to produce or make available for inspection on or before February 20, 2013[,] those documents set forth in the Schedule A attached to the Subpoena at *** 190 S. LaSalle St., Ste 3700, Chicago, Illinois 60603"; and (2) "to appear to give his deposition before a notary public or an officer duly authorized to administer oaths at *** 190 South LaSalle Street, Suite 3700, Chicago IL 60603 *** on February 20, 2013, at 1:00 p.m."

¶ 13   On January 30, 2013, Daewoo filed the subpoena with a certificate of service in the circuit court. The certificate stated:

> "I served the subpoena by sending a copy via Federal Express, as required by Ill. Sup. Ct. Rules 11, 12, 13 and 204(a)(2), to:
>
> Luis Eduardo M. Monteiro
> Director
> American Metals Trading (USA), Inc.
> 1560 N. Sandburg Ter. Apt. 1109
> Chicago, IL 60610.
>
> (Tracking # 7946 2474 2193) on January 29, 2013."

¶ 14    On January 30, 2013, Daewoo's counsel filed a "Notice of Filing" which stated that she had filed the subpoena, "a copy of which is attached thereto and which was previously served upon you on January 29, 2013." The notice was accompanied by a "Certificate of Notice" which stated that, on January 30, 2013, the undersigned "caused a copy of the foregoing notice to be served by depositing it in the United States mail before 5:00 p.m. at 190 LaSalle, Chicago, Illinois, with proper postage paid," and addressed to the same address described above. Thus, Daewoo swore that it had notified Monteiro by both Federal Express and United States mail.

¶ 15    Monteiro did not move within 30 days either to quash the subpoena or appeal the January 29, 2013, order.

¶ 16    On March 11, 2013, Daewoo filed a petition for rule to show cause why Monteiro should not be held in contempt for failing to respond to the subpoena for deposition and documents served on January 29, 2013. The certificate of service states that the petition was sent by electronic and certified mail to Monteiro at the address described above and to his attorney, who is the same attorney representing him on this appeal.

¶ 17    The petition alleged that Monteiro is "the Director, President, and Secretary of AMT USA, owns an apartment in Chicago, maintains bank accounts at First American Bank, an Elk Grove based financial institution, lists his Chicago apartment address on the checks he writes on his First American Bank account; and has at least two vehicles registered in Illinois." Monteiro effectively conceded these factual allegations when he failed to file a response to Daewoo's March 11 petition and failed to contest these allegations in the "Affidavit" he filed with his March 18, 2013, motion to quash.

¶ 18    Daewoo's petition alleged that, prior to Monteiro's scheduled February 20 deposition, on the afternoon of February 19, Daewoo's counsel received a telephone call from Monteiro's counsel, who stated that Monteiro had received the subpoena and forwarded it to him and that he wanted to discuss the production of documents and deposition testimony pursuant to the subpoena. Daewoo was informed that Monteiro would produce only some of the requested documents but none were produced. Ill. S. Ct. R. 204(a)(2) (eff. Dec. 16, 2010) (a deponent must "respond to any lawful subpoena of which [he] has actual knowledge").

¶ 19    Monteiro did not file an answer to the March 11, 2013, petition to show cause, although he did subsequently file a motion to quash the subpoena, which is described below.

¶ 20    On March 15, 2013, Daewoo filed a separate petition pursuant to Rule 204(b) seeking the issuance of subpoenas to First American Bank and AMT USA.

¶ 21                                    II. Monteiro's Motion to Quash

¶ 22    On March 16, 2013, Monteiro's attorney filed a "special and limited appearance" on behalf of Monteiro, entering "the appearance of deponent." On March 18, which was more than 30 days after the court's January 29 order, Monteiro filed a "motion to quash subpoena pursuant to 735 ILCS 5/2-301 [(West 2012)]." Section 2-301 of the Code of Civil Procedure provides in relevant part:

> "Prior to the filing of any other pleading or motion other than a motion for an extension of time to answer or otherwise appear, a party may object to the court's jurisdiction over the party's person, either on the ground that the party is not amenable to process of a court of this State or on the ground of insufficiency of process or insufficiency of

service of process, by filing a motion to dismiss the entire proceeding or any cause of action involved in the proceeding or by filing a motion to quash service of process." 735 ILCS 5/2-301(a) (West 2012).

¶ 23    In the motion, Monteiro asserted that, according to the Federal Express tracking number and website, Daewoo had the subpoena delivered to a "W. Young." Monteiro sought to quash the subpoena on the ground that he had not been properly served and that it did not comply with the New York discovery order. Although the motion did not seek to quash the subpoena based on a lack of personal jurisdiction, the motion also stated that Monteiro was not conceding this issue and he would address it "if and when he is properly served."

¶ 24    The motion did not deny the allegation in Daewoo's petition that Monteiro's counsel had acknowledged on February 19, 2014, the day before the scheduled deposition, that his client had received the subpoena. On that subject, the motion stated: "On several occasions in February 2013, the undersigned [counsel] engaged in discussions with counsel for Daewoo in an effort to settle and resolve the discovery dispute. The undersigned does not believe that it is appropriate to advise the court of the nature and details of settlement negotiations at this time."

¶ 25    The motion had an accompanying document entitled "Affidavit of Luis Eduardo M. Monteiro," which appears to be signed, but is neither dated nor notarized. Section 2-301 provides: "Unless the facts that constitute the basis for the objection are apparent from papers already on file in the case, the motion must be supported by an affidavit setting forth those facts." 735 ILCS 5/2-301(a) (West 2012).

¶ 26    In the undated, unnotarized document, Monteiro did not deny the facts alleged in Daewoo's March 11, 2013, petition that Monteiro is the director, president, and secretary of AMT USA, that he owns an apartment in Chicago, that he maintains bank accounts at First American Bank, an Elk Grove based financial institution, that he lists his Chicago apartment address on the checks he writes on his First American Bank account and that he has at least two vehicles registered in Illinois.

¶ 27    In the undated, unnotarized document, Monteiro also did not deny that he resided, transacted business or could be found in Illinois. This document states in full:

"1. My name is Luis Eduardo M. Monteiro.

2. I am a citizen of Brazil.

3. 'W.Young' has never been authorized to accept service of process on my behalf.

4. It would be necessary for me to travel from Rio de Janiero, Brazil, in order to give deposition testimony in Chicago, Illinois.

5. Rio de Janiero, Brazil is approximately 5,300 miles from Chicago, Illinois.

Further affiant sayeth not."

Although the above document states that Monteiro is "a citizen of Brazil," it does not assert that he is a resident there. Also, although the document states that it would be "necessary" for him to "travel" to attend his deposition, it does not provide the dates when it is true that travel would be necessary.

¶ 28    III. Trial Court's Hearings and Orders in March Through June

¶ 29    On March 18, 2013, at a proceeding before the trial court, Monteiro's attorney informed the circuit court that he had filed a "special unlimited appearance on behalf" of his client and

had just filed a motion to quash that morning. When Daewoo's counsel started to explain the background to the litigation, the trial court interrupted:

> "THE COURT: But the only thing I have to deal with today is whether or not service was proper because apparently that's what you're here to contest?
> MONTEIRO'S COUNSEL: Yeah."

Daewoo's attorney argued that Monteiro "had actual knowledge of that subpoena and under [Rule] 204(a), we tendered mileage fees and costs. With actual knowledge of a lawful subpoena, Mr. Monteiro, had an obligation to respond." Supreme Court Rule 204(a)(2) requires a deponent to "respond to any lawful subpoena of which the deponent has actual knowledge." Ill. S. Ct. R. 204(a)(2) (eff. Dec. 16, 2010). The trial court responded that, "unless we find out if service is proper, the rule doesn't have any bite," and it issued a written order continuing Daewoo's petition and Monteiro's motion to quash until March 26, 2013.

¶ 30 On March 22, 2013, Daewoo filed a response to Monteiro's motion to quash his subpoena and asked the court to hold Monteiro in contempt. In its response, Daewoo again observed that Monteiro did not deny actual knowledge of the subpoena and that he maintained a residence, vehicles and bank accounts in Illinois and Daewoo argued that it had properly served Monteiro.

¶ 31 On March 26, 2013, the parties again appeared before the court, and this transcript is in the record. Monteiro's counsel stated that Monteiro is "presently" in Brazil. Daewoo's counsel stated "we would be willing to find a deposition date for the next time Mr. Monteiro is in Chicago at his Chicago residence." The trial court stated that it did not "want to waste time and money on this silliness" of the form of service and suggested that Daewoo send the subpoena by certified United States mail, which Daewoo agreed to do. Monteiro's counsel asked the court if he could "maintain [his] continuing jurisdictional objection," and the court replied "yes."

¶ 32 Daewoo agreed to send the subpoena again by United States mail, although the record on appeal contains a "Certificate of Notice," in which Daewoo's counsel swore that she had sent Monteiro the subpoena by United States mail on January 30, 2013.

¶ 33 The parties and the court then discussed Daewoo's document requests to Monteiro both on and off the record. The court stated that the request should be limited to the time frame when Daewoo paid the $14.5 million, and the parties went off the record. Back on the record, the court stated: "[Daewoo's] counsel is going to send out another subpoena via U.S. mail, registered mail, certified mail, to cure any defects" and "[w]e are just dealing with documents now."

¶ 34 During the March 26 proceeding, Monteiro's counsel conceded to the court that Monteiro was found here regularly. When the parties were on the record, the court stated to Monteiro's counsel: "You say he comes here quite frequently?" Monteiro's counsel answered: "From time to time, yeah." Counsel then represented to the court that he could "find *** out" precisely when Monteiro would be here, presumably for the purposes of informing Daewoo, which never occurred.

¶ 35 The concession occurred during the following exchange:

> "MONTEIRO'S COUNSEL: So the subpoena won't be for a deposition, just be a document?

- 6 -

THE COURT: Well, the deposition is going to happen when he's back in the United States. You say he comes here quite frequently?

MONTEIRO'S COUNSEL: From time to time, yeah. And I can find that out.

THE COURT: Okay."

¶ 36    Concerning Daewoo's agreement to resend the subpoena, the court observed: "[Monteiro] clearly has the subpoena; but it just is easier to cross the t's and dot the i's so that all these issues are off the table." Then Daewoo's counsel asked if, once Daewoo resends the subpoena, could it then have an order to Monteiro to produce the documents, and the court replied "[y]es." The court stated that it would be "the same subpoena," but:

"THE COURT: I have ordered that the time period be restricted to the time at which the funds were deposited into the defendants' account to the present. ***

I am going to allow number one–in number one–document request number one–that the defendant–I shouldn't say defendant–excuse me–Mr. Monteiro, Luis Eduardo Monteiro, produce all of his bank accounts."

¶ 37    The court explained: "So if you understand the nature of the order today, it is that I am attempting to enable the plaintiff to obtain documents that will aid the plaintiff in tracing the $14.5 million. That is the intent of my order."

¶ 38    The written order, entered on March 26, 2013, stated in full:

"This coming before the court on Daewoo's Petition for Rule to Show Cause & Luis Eduardo [Monteiro's] Motion to Quash Subpoena, due notice given & the Court having been advised on the premises, it is hereby ORDERED:

Both motions are entered and continued for the reasons stated on the record and this matter is continued for status to April 9, 2013 at 10:45 a.m."

¶ 39    On March 28, according to a "Certificate of Service" in the record, Daewoo sent the subpoena for a third time to Monteiro at the apartment on Sandburg Terrace in Chicago, as well as a courtesy copy to his attorney. Per the suggestion of the court, this copy was sent by certified mail.

¶ 40    On April 9, the court entered a written order stating:

"This coming before the court on continued status of Daewoo's Petition for Rule to Show Cause & Luis Eduardo [Monteiro's] Motion to Quash Subpoena, due notice given & the court advised in the premises, it is hereby ORDERED:

1) Luis Eduardo [Monteiro] shall produce the documents requested in the subpoena as limited by the court's March 26, 2013 Order within twenty-eight days (May 7, 2013)[;]

2) If Luis Eduardo comes within 200 miles of Chicago within the next 28 days he shall appear for deposition[;]

3) The Petition & Motion are continued to May 8, 2013 at 10:00 a.m."

The April 9, 2013, order was the circuit court's second order permitting discovery from Monteiro; the first one was the circuit court's grant of Daewoo's original Rule 204(b) petition on January 29, 2013. Monteiro did not appeal either the January 29, 2013, order or the April 9, 2013, order.

¶ 41    On April 12, 2013, Monteiro's attorney filed an emergency motion to quash the subpoena to First American Bank. Daewoo had previously filed a petition on March 15, 2013, for

issuance of a subpoena to the bank and Daewoo served a subpoena on the bank on March 29, 2013, requesting documents relating to AMT and Monteiro from January 1, 2010, to the present. In the motion to quash, Monteiro argued that: "Absent an express finding by either the New York Court or this Court that Luis Eduardo is an alter ego of AMT, Daewoo's attempt to discover this individual's personal assets is improper."

¶ 42     On April 16, 2013, at a hearing on Monteiro's emergency motion, Monteiro's counsel informed the court: "[T]here's a meeting scheduled for the 28th and the 29th of this month between the [AMT] LLP people and the Daewoo people in Brazil where they're hopefully going to try to work out this whole thing." Based on that representation, and over Daewoo's objection that Monteiro has been "stalling the discovery of evidence since the end of January," the court entered a written order continuing the matter until May 8, 2013.

¶ 43     On May 6, 2013, Daewoo filed an affidavit from one of its employees confirming that a meeting did take place on April 30, 2013, in Brazil, but that it appeared to be nothing more than a tactic by AMT to delay the legal proceedings, and that "no further meetings are planned."

¶ 44     On May 8, 2013, the circuit court set a hearing date of May 31 for "Daewoo's petition for rule to show cause and Luis Eduardo [Monteiro's] motion to quash subpoena pursuant to 735 ILCS 5/2-301 and motion to quash subpoena to First American Bank." On May 30, the day before the scheduled hearing, Monteiro produced some documents "without any waiver or prejudice to our pending objections."[1] On May 31, the court continued the petition and motions to August 2, and ordered "Daewoo to seek clarification from court in New York as to scope of discovery."

¶ 45     In response, the supreme court of New York issued an order on June 19, 2013, stating in relevant part:

> "NOW, having read the May 31, 2013, Order of Judge Eileen Mary Brewer of the Circuit Court of Cook County, Illinois, among other things directing Petitioner [Daewoo] 'to seek clarification from [the] Court in New York as to [the] scope of discovery,' it is hereby
>
> ORDERED, that commissions are hereby issued to the State of Illinois for Petitioner [Daewoo] to conduct oral examinations of, and obtain documentation from Luis Eduardo M. Monteiro *** within the scope of the Subpoenas annexed hereto."

The attached subpoena directed Monteiro to produce documents on July 15, 2013, and to appear for a deposition in Chicago on July 22, 2013. This was the New York court's second order directing discovery from Monteiro.

¶ 46     On June 28, 2013, the circuit court granted Daewoo's petition for issuance of a subpoena directing Monteiro to produce documents by July 15, 2013, and to appear for a deposition in Chicago on July 22, 2013. A certificate of service stated that the subpoena was mailed on June 28 by certified mail to Monteiro at the apartment on Sandburg Terrace in Chicago. This was now the third order by an Illinois circuit court permitting discovery from Luis Monteiro. Monteiro did not appeal (1) the January 29, 2013, order, (2) the April 9, 2013, order, or (3) the June 28, 2013, order.

---

[1]Although the document production is not in the appellate record, Daewoo stated in a December 27, 2013, filing that the documents "showed that Daewoo's money had been wired to offshore accounts in Amsterdam, and then the Caribbean, but did not show the current location of the money."

¶ 47                        IV. Daewoo's Second Petition for Rule to Show Cause

¶ 48        On August 1, 2013, more than six months after the circuit court had first granted Daewoo's Rule 204(b) petition, Daewoo filed its second petition for rule to show cause as to why Monteiro should not be held in contempt for failing to produce documents and to appear for a deposition, after three court orders permitting this discovery.

¶ 49        On August 2, 2013, the circuit court issued a written order directing Monteiro to comply with the subpoena:

> "This cause coming to be heard for status, IT IS HEREBY ORDERED:
>
> (1) Luis Eduardo [Monteiro] must comply with subpoena as clarified by New York court within 35 days;
>
> (2) This case is set for status on all pending matters and motions on September 12, 2013, on 10 a.m."

Thirty-five days from August 2 was Friday, September 6, 2013. This was the circuit court's fourth order granting discovery from Monteiro, and Monteiro did not appear for a deposition within the 35 days specified or appeal from the order.

¶ 50        On September 12, 2014, the circuit court issued a written order stating:

> "This cause coming to be heard for status, IT IS HEREBY ORDERED:
>
> (1) Luis Eduardo Monteiro's Emergency Motion to Quash Subpoena to First American Bank, over the objection of Luis Eduardo that there has not been a substantial showing that he is an alter ego, has been denied;
>
> (2) Parties encouraged to work together to agree on outstanding issues, including deposition date and time for Luis Eduardo Monteiro;
>
> (3) Case is set for status on November 12, 2013 at 10:15 a.m."

¶ 51        Although the record does not contain a transcript or bystander's report for the September 12 status conference, a letter from Daewoo's counsel to Monteiro's counsel on the same day states: "During today's status conference with Judge Brown, *** you indicated for the first time your client's willingness to work with Daewoo to schedule a date and time for deposition. You also indicated that it may be more convenient for Mr. Monteiro to schedule his deposition in New York. We are happy to accommodate this request[;] *** please provide us with dates on which your client can be available for a deposition in New York prior to September 23, 2013."

¶ 52        In addition, in a filing dated December 12, 2013, Monteiro stated that, on the day of this status conference, he had produced 567 documents.

¶ 53        On November 14, the circuit court once again ordered Monteiro's compliance, stating in relevant part:

> "This cause coming to be heard for status, IT IS HEREBY ORDERED:
>
> (1) Luis Eduardo Monteiro has not fully complied with subpoena for documents and deposition despite this court's orders dated August 2, 2013 and September 12, 2013;
>
> (2) Luis Eduardo Monteiro must comply with subpoena, including providing deposition testimony, within 30 days ***."

Thirty days from November 14 was Saturday, December 14, 2013, and a status conference was set for January 2, 2014. The court's use of the words "not fully complied" indicates that

Monteiro produced some documents in response to the subpoena. This was the circuit court's fifth order granting discovery from Monteiro.

¶ 54    On November 26, 2013, Daewoo's counsel again sent Monteiro's counsel a letter offering him the option of holding the deposition in New York "on any date of your choosing prior to December 14."

¶ 55                              V. Monteiro's Motion to Vacate

¶ 56    On Thursday, December 12, 2013, two days before the 30-day period was to expire, Monteiro filed an "emergency motion" to vacate the portion of the November 14 order directing him to appear for deposition in Chicago. The motion stated that it was made pursuant to section 2-1301(e) of the Code of Civil Procedure, which permits a court, "on motion filed within 30 days after entry" of a final judgment, to set it aside. 735 ILCS 5/2-1301(e) (West 2012).

¶ 57    The motion stated that Monteiro had produced 567 pages of documents on September 12, but he sought to vacate the deposition portion of the order, "because (1) the petitioner has not alleged that Luis Eduardo resides, is employed, transacts business in person, or is found in Cook County and (2) Luis Eduardo has resided and worked in Brazil since 2012–prior to the initiation of this matter." The motion also argued that Monteiro did not "transact" business in Cook County, because the word refers to more than a single incidental transaction.

¶ 58    The motion included a document entitled Monteiro's "Affidavit," but the document is not notarized. The document states:

> "1. My name is Luis Eduardo M. Monteiro.
>
> 2. I am a citizen of Brazil.
>
> 3. I am currently living in Brazil and have been since 2011.
>
> 4. I have not resided in Cook County, Illinois since 2011.
>
> 5. I was previously employed by AMT USA, but have not been employed by AMT USA since 2012.
>
> 6. AMT ceased business operations in 2012.
>
> 7. It would be necessary for me to travel from Rio de Janeiro, Brazil in order to give deposition testimony in Chicago, Illinois.
>
> 8. Rio de Janiero, Brazil is approximately 5,300 miles from Chicago, Illinois.
>
> Further Affiant sayeth not."

The above document does not assert either: (1) that Monteiro is not found in Chicago, or (2) the dates when travel would be needed for him to attend a deposition in Chicago.

¶ 59    On December 13, 2013, the circuit court issued a written order stating that "the portion of the November 14, 2013[,] order as it relates to Luis Eduardo M. Monteiro is vacated pending further briefing and forthcoming ruling on the issues raised in this motion."

¶ 60    In its response, Daewoo alleged that it had paid Monteiro's "company $14.5 million for pig iron. Luis Eduardo [Monteiro] informed Daewoo that the pig iron Daewoo purchased had been delivered. In fact, the pig iron apparently never existed, and Luis Eduardo [Monteiro] instead wired Daewoo's money to a Caribbean bank account, where it has since disappeared. Luis Eduardo [Monteiro], a Chicago resident, ran this scam through a Chicago-based business. He has apparently now shuttered this business and fled to Brazil." Daewoo alleged that it had

received an arbitration award against AMT LLP but it "has been unable to locate any assets upon which to collect this award."

¶ 61 Daewoo alleged, as it had in its first petition to show cause, that Monteiro owns an apartment in Chicago; maintains bank accounts at First American Bank, an Elk Grove based financial institution; lists his Chicago apartment address on the checks he writes on his First American Bank account; and has at least two vehicles registered in Illinois.

¶ 62 In addition, Daewoo alleged (1) that Monteiro's individual retirement account distribution form, dated January 9, 2013, lists Illinois as his state of residence; (2) that his personal bank records show that during the first half of 2013 he made mortgage and utility payments, made doctor's visits in Chicago and took regular golf lessons at a country club in Chicago; (3) that AMT corporate filings dated June 8, 2013, list his country of residence as the United States; and (4) that, on July 19, 2013, he was in Chicago to attend the closing of the sale of one of his two apartments in the 1560 North Sandburg Terrace building. Daewoo alleged that most of these events occurred while its January 2013 subpoena was pending.

¶ 63 In his reply filed December 27, 2013, Monteiro did not dispute either "the fact that [he] listed Illinois as his residence on certain forms" or the factual allegations concerning his doctor visits, golf lessons and attendance at a closing in Chicago. However, he did assert that he "does not presently reside in Cook County."

¶ 64 In his reply, Monteiro also stated that his "motion to vacate is not based upon a lack of personal jurisdiction, but rather on Daewoo's failure to fulfill the statutory requirements of Sup. Ct. R. 204(b)."

¶ 65 On January 13, 2014, the circuit court set Monteiro's motion to vacate for a hearing on January 24, 2014. After the hearing, the circuit court issued a written order stating in full:

> "This cause coming to be heard on Luis Eduardo Monteiro's Emergency Motion to Vacate [the] November 14, 2013[,] court order, IT IS HEREBY ORDERED:
>
> (1) Luis Eduardo Monteiro's Emergency Motion is denied;
>
> (2) Luis Eduardo Monteiro to appear for deposition at *** 77 W. Wacker Drive, Chicago, IL *** within 21 days;
>
> (3) Luis Eduardo Monteiro will be subject to a $1,000 per day penalty for every day after that time should he fail to appear for deposition within 21 days;
>
> (4) Parties to appear for status on March 6, 2014[,] at 10:30 a.m."

Excluding the November 14 order that was subsequently vacated, this was the circuit court's fifth order granting discovery from Monteiro.

¶ 66 Twenty-one days from January 24, 2014, was Friday, February 14, 2014. On February 13, the day before the 21-day period was about to expire, Monteiro filed a notice of appeal stating that he appealed "from the order of January 24, 2014." However, the record on appeal does not contain a transcript or bystander's report for the January 24 hearing. This appeal followed.

¶ 67                                                              ANALYSIS

¶ 68 On this appeal, respondent raises one claim: that "the circuit court erred in finding that Daewoo had complied with the requirements of Rule 204(b)."

¶ 69 Rule 204(b) provides in full:

"(b) Action Pending in Another State, Territory, or Country. Any officer or person authorized by the laws of another State, territory, or country to take any deposition in this State, with or without commission, in any action pending in a court of that State, territory, or country may petition the circuit court in the county in which the deponent resides or is employed or transacts business in person or is found for a subpoena to compel the appearance of the deponent or for an order to compel the giving of testimony by the deponent. The court may hear and act upon the petition with or without notice as the court directs." Ill. S. Ct. R. 204(b) (eff. Dec. 16, 2010).

"[I]t is the intent of the rule to empower the circuit court to grant the same discovery in Illinois in aid of an action pending in another State as it could order in an action pending in Illinois." *Eskandani v. Phillips*, 61 Ill. 2d 183, 197 (1975).

¶ 70 Respondent claims that Daewoo's Rule 204(b) petition failed to satisfy the pleading and proof requirements inherent in Rule 204(b). However, for the following reasons, we find that we lack jurisdiction to consider respondent's claim.

¶ 71                                                   I. Rule 301

¶ 72 Before we proceed to consider the merits of the parties' arguments, we must first consider whether we have subject matter jurisdiction. An appellate court has a duty to consider its own jurisdiction, whether or not the parties have raised it as an issue. *People v. Lewis*, 234 Ill. 2d 32, 36-37 (2009) ("courts of review have an independent duty to consider [their own subject matter] jurisdiction even if a jurisdictional issue is not raised by the parties," and subject matter jurisdiction is "a threshold issue"); *Secura Insurance Co. v. Illinois Farmers Insurance Co.*, 232 Ill. 2d 209, 213 (2009) ("A reviewing court must ascertain its [own subject matter] jurisdiction before proceeding in a cause of action, regardless of whether either party has raised the issue."); *People v. Smith*, 228 Ill. 2d 95, 106 (2008) ("We take this opportunity to remind our appellate court of the importance of ascertaining whether it has jurisdiction in an appeal." The ascertainment of its own jurisdiction is one of the "most important tasks of an appellate court panel when beginning the review of a case."); *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998) ("A reviewing court must be certain of its jurisdiction prior to proceeding in a cause of action.").

¶ 73 Monteiro states in his appellate brief that this court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which states in full:

"Every final judgment of a circuit court in a civil case is appealable as of right. The appeal is initiated by filing a notice of appeal. No other step is jurisdictional. An appeal is a continuation of the proceeding."

¶ 74 Monteiro argues that, according to *Eskandani v. Phillips*, 61 Ill. 2d 183, 195 (1975), when an Illinois circuit court orders the requested discovery in a petition under Rule 204(b), that order constitutes a "final judgment" for purposes of Rule 301, because the discovery is all that is sought before the Illinois circuit court.

¶ 75 In *Eskandani*, our supreme court explained that "if the main action were pending in Illinois the order would be interlocutory and not appealable," and the only way to test the correctness of the order would be through a contempt proceeding. *Eskandani*, 61 Ill. 2d at 194. See also *Norskog v. Pfiel*, 197 Ill. 2d 60, 69 (2001) ("it is well settled that the correctness of a discovery order may be tested through contempt proceedings"). The reason that "[p]reliminary orders in

an action pending in this State are not final and appealable" is because "they can be reviewed on appeal from the final judgment in the case." *Eskandani*, 61 Ill. 2d at 194.

¶ 76    By contrast, when a petition is filed pursuant to Rule 204(b), "[t]he only action in Illinois is the petition." *Eskandani*, 61 Ill. 2d at 194. As a result, the discovery "order entered by the circuit court is the final judgment in the Illinois proceeding." *Eskandani*, 61 Ill. 2d at 194. Even when discovery is conducted on behalf of an out-of-state action, if it is conducted in Illinois, it "must be conducted pursuant to our rules." *Eskandani*, 61 Ill. 2d at 194. The only opportunity for review by an Illinois appellate court of the correctness of an Illinois circuit court's Rule 204(b) order is by an appeal from that order. *Eskandani*, 61 Ill. 2d at 194.

¶ 77    Thus, Monteiro is correct that Rule 301 provides this court with jurisdiction to review a circuit court's order granting a Rule 204(b) petition.

¶ 78                               II. Timely Notice of Appeal

¶ 79    Our inquiry into jurisdiction does not end here, however, because jurisdiction under Rule 301 requires the filing of a timely notice of appeal. For jurisdiction to exist under Rule 301, the appellant must file a timely notice of appeal, and this "step is jurisdictional." Ill. S. Ct. R. 301 (eff. Feb. 1, 1994).

¶ 80    In the case at bar, the circuit court issued an order granting discovery, pursuant to Rule 204(b), on January 29, 2013. The court could not have issued this order without finding that Daewoo had satisfied the requirements of Rule 204(b). Since the only action in Illinois was the petition filed by Daewoo on January 28, 2013, to obtain discovery from and depose Monteiro and others in Illinois pursuant to Rule 204(b), the January 29, 2013, order was the final judgment in the Illinois proceeding.

¶ 81    Monteiro's actual knowledge of the order within 30 days is established by the fact that his counsel contacted Daewoo's counsel on February 19, 2013, and acknowledged Monteiro's prior receipt of the subpoena. This conversation was alleged in Daewoo's March 11, 2013, petition for rule to show cause, and Monteiro did not deny it in his March 18, 2013, motion to quash. In the March 18 motion, Monteiro's counsel acknowledged that he had discussed the subpoena with Daewoo's counsel "[o]n several occasions in February 2013." In addition, on March 26, the trial court found, as a matter of fact, that Monteiro "clearly has the subpoena." Thus, Monteiro had actual knowledge of the subpoena and could have appealed it or moved to quash it before February 28, which was 30 days after the January 29 order, but he did not do so. Monteiro did not file a motion to quash until March 18, which was 48 days after the January 29 order.

¶ 82    In an appeal from a final judgment of a circuit court in a civil case, such as in this appeal, an appellant must file the notice of appeal "within 30 days after the entry of the final judgment appealed from." Ill. S. Ct. R. 303(a)(1) (eff. May 30, 2008). As explained above, "the final judgment appealed from" in the instant case was the circuit court's January 29, 2013, order, and Monteiro failed to appeal it within 30 days after its entry.

¶ 83    However, Rule 303 also provides that, "if a timely posttrial motion directed against the judgment is filed, whether in a jury or nonjury case," then the notice of appeal must be filed "within 30 days after the entry of the order disposing of the last pending postjudgment motion directed against that judgment or order, irrespective of whether the circuit court had entered a series of final orders that were modified pursuant to postjudgment motions. *** No request for

- 13 -

reconsideration of a ruling on a postjudgment motion will toll the running of the time within which a notice of appeal must be filed under this rule." Ill. S. Ct. R. 303(a)(1), (2) (eff. May 30, 2008).

¶ 84    To satisfy the above-quoted portion of the rule, the first act required is the filing of "a timely posttrial motion" against the judgment appealed from. Ill. S. Ct. R. 303(a)(1), (2) (eff. May 30, 2008). Similarly, Supreme Court Rule 274 provides that only a "timely postjudgment motion shall toll the finality and appealability of the judgment or order at which it is directed." Ill. S. Ct. R. 274 (adopted Oct. 14, 2005).

¶ 85    To determine whether Monteiro filed a "timely posttrial motion," we must look to section 2-1203 of the Code of Civil Procedure, which governs the timing of posttrial motions in nonjury cases, such as this one. 735 ILCS 5/2-1203(a) (West 2012). Section 2-1203 provides in relevant part:

> "In all cases tried without a jury, any party may, within 30 days after the entry of the judgment or within any further time the court may allow within the 30 days or any extensions thereof, file a motion for a rehearing, or a retrial, or modifications of the judgment or to vacate the judgment or for other relief." 735 ILCS 5/2-1203(a) (West 2012).

Thus, section 2-1203 requires a party either: (1) to file a motion "within 30 days after the entry of the judgment," or (2) to seek an extension "within the 30 days." 735 ILCS 5/2-1203(a) (West 2012); *Manning v. City of Chicago*, 407 Ill. App. 3d 849, 852 (2011). See also 735 ILCS 5/2-1301(e) (West 2012) (a court "may on motion filed within 30 days after entry" of a final judgment set it aside in its discretion and on reasonable terms). As already discussed, Monteiro did neither. His first motion to vacate was filed 48 days after the entry of the circuit court's January 29 order, and he did not seek an extension "within the 30 days." 735 ILCS 5/2-1203(a) (West 2012). As quoted above, section 2-1203 also covers motions "to vacate the judgment." 735 ILCS 5/2-1203(a) (West 2012). While a circuit court may grant an extension, section 2-1203 provides that "any further time the court may allow" must be allowed "within the 30 days." 735 ILCS 5/2-1203(a) (West 2012); *Manning*, 407 Ill. App. 3d at 852. This did not happen in the instant case.

¶ 86    Our supreme court has held that where an appellant fails to file either a timely postjudgment motion or appeal from the entry of a final judgment within 30 days, then any subsequent notice of appeal is not timely, and "the appellate court ha[s] no jurisdiction to consider the merits of this case." *Keener v. City of Herrin*, 235 Ill. 2d 338, 348 (2009). Thus, we lack jurisdiction to consider the merits of this appeal.

¶ 87    While it is true that an appellate court normally has jurisdiction to consider prior discovery orders that were preliminary steps to the order appealed from, that is because they were not final and appealable (*People v. Jakuboski*, 42 Ill. App. 3d 1067, 1070 (1976)), as was the order in the instant appeal.

¶ 88    Our supreme court has given the deponent in an out-of-state action the privilege of an immediate appeal that he or she would otherwise not have if the action were in-state. *Eskandani*, 61 Ill. 2d at 194. This is a privilege that should not be abused. It recognizes that, even though a fully competent sister state like New York ordered prompt discovery in a case before it, an Illinois deponent still has the right to insist that a subpoena must be executed here according to Illinois law. *Eskandani*, 61 Ill. 2d at 194. Thus, the deponent is in the unique position of being able to challenge a subpoena twice in two different courts: in the court where

the action occurs and in our court. The possibility for delay is great. In the instant case, for example, courts in both New York and Illinois issued multiple orders during the course of a year to compel discovery. However, the deponent may lose this privilege of filing in two courts, if he or she does not act in the timely fashion required by our code. *Eskandani*, 61 Ill. 2d at 191, 193 (appellant filed a notice of appeal within 30 days of the circuit court's grant of the Rule 204(b) petition).

¶ 89    The 30-day limit provided in section 2-1203 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1203(a) (West 2012)) prevents the type of stalling and abuse of process which took place here. Court orders are not advisory, and in this case, the circuit court issued five of them, and the New York court issued at least two. *Cf. Manning*, 407 Ill. App. 3d at 851 ("Our state's rules and procedures regarding legal proceedings are not mere suggestions but, instead, are required to be followed by all parties to a cause of action in our courts.").

¶ 90    Thus, pursuant to the timing requirements in our Code that are designed to safeguard the prompt administration of justice, we lack jurisdiction over this appeal. As our courts have often stressed, justice delayed may lead to justice denied, and Monteiro's deposition in this case has been delayed too long. *People v. Ladd*, 294 Ill. App. 3d 928, 930 (1998) (" 'justice delayed is justice denied' "); *People v. Wasilewski*, 66 Ill. App. 3d 1, 5 (1978) ("there is merit to the cliché that justice delayed is justice denied"); *Busser v. Noble*, 8 Ill. App. 2d 268, 279 (1956) ("justice delayed is justice denied"); *Gray v. Gray*, 6 Ill. App. 2d 571, 578-79 (1955) ("The law's delay in many lands and throughout history has been the theme of tragedy and comedy. *** 'Justice delayed is justice denied,' and regardless of the antiquity of the problem and the difficulties it presents, the courts and the bar must do everything possible to solve it.").

¶ 91                                   CONCLUSION

¶ 92    For the foregoing reasons, we conclude that we lack jurisdiction to consider Monteiro's claim and dismiss this appeal.

¶ 93    Appeal dismissed.